United States District Court
Southern District of Texas

**ENTERED**

July 08, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SANDRA BANKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2259 |
| | § | |
| WAL-MART STORES TEXAS, LLC and | § | |
| WAL-MART STORES, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sandra Banks ("Banks" or "Plaintiff") sued defendant Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC ("Defendants" or "Wal-Mart") in the 127th Judicial District Court of Harris County, Texas, under Cause No. 2015-34952.[1]  Defendant timely removed.[2]  Pending before the court is Defendant Wal-Mart Stores Texas, LLC's Traditional Motion for Summary Judgment ("Motion for Summary Judgment") (Docket Entry No. 27).  For the reasons stated below, the Motion for Summary Judgment will be granted, and this action will be dismissed.

---

[1] Plaintiff's Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-2.  The Original Petition only names Wal-Mart Stores, Inc.  Banks amended to also include Wal-Mart Stores Texas, LLC.  See Plaintiff's First Amended Original Complaint ("Amended Complaint"), Docket Entry No. 21.  Defendant's Original Answer to Plaintiff's First Amended Original Complaint, Docket Entry No. 22, p. 1, asserts that Wal-Mart Stores Texas, LLC was incorrectly named as Wal-Mart Stores, Inc., although both are named in the Amended Complaint.

[2] Notice of Removal, Docket Entry No. 1.

## I.   Background

Banks alleges that on June 11, 2014, she was grocery shopping at a Wal-Mart in Houston, Texas, "when she tripped and fell over a bar that was sticking out from the bottom of a mid-isle [sic] freezer," resulting in serious injuries.[3] Banks asserts a premises liability claim and seeks damages for physical pain and mental anguish, disfigurement, physical impairment, and medical expenses.[4] After a period of discovery, Wal-Mart moved for summary judgment.[5]

## II.   Motion for Summary Judgment

### A.   Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).[6]  Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby, Inc., 106 S. Ct.

---

[3]Amended Complaint, Docket Entry No. 21, p. 2 ¶ 7; see also pp. 2-3 ¶¶ 6-8.

[4]See id. at 3 ¶¶ 9, 12.

[5]See Motion for Summary Judgment, Docket Entry No. 27, p. 2.

[6]Wal-Mart labels its motion as a "Traditional Motion for Summary Judgment pursuant to Texas Rule of Civil Procedure 166a." Id. at 1.   Because this action was removed on the basis of diversity jurisdiction, the court will analyze the motion using the applicable standard under Federal Rule of Civil Procedure 56.   See Rosero v. Fuentes, Civ. Action Nos. 1-10-85, 1-10-51, 2011 WL 4017871, at *2 (S.D. Tex. Sept. 8, 2011); see also Kingman Holdings, LLC v. Bank of New York, Civ. Action No. 3:13-CV-1688-L, 2014 WL 1462908, at *3 n.3 (N.D. Tex. April 15, 2014).   See also note 10 infra.

2505, 2510 (1986).  The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id.  If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553–54).  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

"In order to avoid summary judgment, the nonmovant must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact." CQ, Inc. v. TXU Mining Co., L.P., 565 F.3d 268, 273 (5th Cir. 2009).  "The party must also articulate the precise manner in which the submitted or identified evidence supports his or her claim." Id. (internal quotation marks and citation omitted).  "When evidence exists in

the summary judgment record but the nonmovant *fails even to refer to it* in the response to the motion for summary judgment, that evidence is not properly before the district court." <u>Id.</u> (same).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## B.   Analysis

Banks asserts that Wal-Mart "knew or should have known that a dangerous condition existed at their store, which condition posed an unreasonable risk of harm to [Banks]."[7] The elements of a Texas premises liability cause of action are:

---

[7] <u>See</u> Amended Complaint, Docket Entry No. 21, p. 3 ¶ 9. Banks labels her claim "negligence." "Texas law requires a plaintiff suing a premises owner for negligence to identify his cause of action as either premises liability or negligent activity, which are two independent theories of recovery . . . ." <u>Allen v. Wal-Mart Stores Texas, LLC</u>, Civ. Action No. H-14-3628, 2015 WL 1955060, at *5 (S.D. Tex. April 29, 2015). Banks' claim is for premises liability. <u>See</u> <u>id.</u> ("Although [plaintiff] identifies his cause of action as one for negligence, it actually is for premises liability because it is the result of [defendant's] purported failure to prevent injury to him because of a wet substance on the floor, an unsafe condition of the premises, rather than any affirmative, contemporaneous, ongoing activity."); <u>see</u> <u>also</u> <u>Henderson v. Wal-Mart Stores, Inc.</u>, Civ. Action No. 1:14-cv-224, 2015 WL 970673, at *5 (E.D. Tex. March 2, 2015).

-4-

(1)   Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2)   That the condition posed an unreasonable risk of harm;

(3)   That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4)   That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992) (citing Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983)). Without conceding liability as to elements three and four, Wal-Mart argues that there is no genuine issue of material fact as to the first two elements because Wal-Mart did not have actual or constructive knowledge of the condition, and because the condition was open and obvious, such that it did not present an unreasonable risk of harm.[8]

## C.   Knowledge of the Condition

A plaintiff asserting a premises liability claim satisfies the notice element by establishing that: (1) the defendant created the condition; (2) the defendant actually knew of the condition; or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it.[9] See Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812,

---

[8]See Motion for Summary Judgment, Docket Entry No. 27, p. 3. Because the court will grant summary judgment to Wal-Mart based on the first element, the court will not address the second element.

[9]Discussing the "more likely than not" standard in Sturdivant v. Target Corp., 464 F. Supp. 2d 596, 599-600 (N.D. Tex. 2006), the
(continued...)

814 (Tex. 2002) (citing <u>Wal-Mart Stores, Inc. v. Gonzalez</u>, 968 S.W.2d 934, 936 (Tex. 1998); <u>Keetch</u>, 845 S.W.2d at 265).[10]   Banks argues that there is evidence that Wal-Mart should have known about the bar.[11]   Constructive knowledge can be established by showing

_____

[9](...continued)
court considered whether "the Court should weigh the Plaintiff's evidence on constructive notice, as a [Texas] state court would, or whether the Court should merely evaluate the evidence to determine whether there is sufficient evidence to create a genuine issue of material fact."   The court held "[i]n federal court, it is beyond questioning that disputed issues of fact are to be decided by the jury.   For this reason, the Court is not to weigh evidence when considering a motion for summary judgment."   <u>Id.</u> at 600 (citations omitted); <u>see also</u> <u>Reeves</u>, 120 S. Ct. at 2110; <u>Miller v. Wal-Mart Stores Texas, LLC</u>, Civ. Action No. G-12-057, 2013 WL 620469, at *4 (S.D. Tex. Jan. 4, 2013); <u>Yin v. Wal-Mart Stores, Texas, LP</u>, Civ. Action No. B-09-26, 2009 WL 3753491, at *3 (S.D. Tex. Nov. 6, 2009).   This court will likewise follow the federal standard.   <u>See</u> <u>Murray v. Chick-Fil-A, Inc.</u>, 626 F. App'x 515, 518 (5th Cir. 2015) ("[W]e reject the argument that constructive notice is a question of fact solely for the jury because it concerns state of mind.   To survive summary judgment on this question, Murray must show some evidence that would enable a reasonable jury to find it was more likely than not that the condition existed long enough that Chick-fil-A should have discovered it.") (citing <u>Sturdivant</u>, 464 F. Supp. 2d at 600-01).

[10]<u>Reece</u> involved a "slip-and-fall" plaintiff, but courts recognize that these are the three general methods of establishing notice in any premises liability case.   <u>See, e.g.</u>, <u>Garcia v. Ross Stores, Inc.</u>, 896 F. Supp. 2d 575, 580 (S.D. Tex. 2012) (plaintiff tripped over a hanger) (citing <u>Keetch</u>, 845 S.W.2d at 264); <u>Harvey v. Racetrac Petroleum, Inc.</u>, Civ. Action No. 3:07-CV-1828-D, 2009 WL 577605, at *1 (N.D. Tex. March 6, 2009) (child's finger partially amputated by a door in the restroom).   <u>See also</u> <u>CMH Homes, Inc. v. Daenen</u>, 15 S.W.3d 97, 102-03 (Tex. 2000) (rejecting the court of appeals' holding that the temporal element in premises cases should be limited to "slip and fall" and holding that "[i]n premises cases constructive knowledge can be established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection").

[11]<u>See</u> Plaintiff's Response to Defendant Wal-Mart Stores, Texas, LLC's Traditional Motion for Summary Judgment ("Plaintiff's (continued...)

"that the condition had existed long enough for the owner . . . to have discovered it upon reasonable inspection." CMH Homes, 15 S.W.3d at 102-03; Gonzalez, 968 S.W.2d at 936 (evidence supporting only the possibility that the condition existed long enough to be discovered is insufficient).

This "time-notice" rule is based on the assumption that temporal evidence best indicates whether the premises owner had a reasonable opportunity to discover and remedy a dangerous condition. See Reece, 81 S.W.3d at 816. Evidence that an employee was in close proximity to the dangerous condition before the plaintiff fell, without more, is not legally sufficient to charge the premises owner with constructive notice. Id. at 813. "[T]here must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." Id. at 816. What constitutes a reasonable time for a premises owner to discover a dangerous condition varies depending upon the facts and circumstances. Id.

---

[11](...continued)
Response"), Docket Entry No. 29, p. 1. Although Banks' Amended Complaint, Docket Entry No. 21, p. 3 ¶ 9, alleges that "The Defendants were negligent in the following ways:  a. In creating the dangerous condition. . . .", Banks does not argue that Wal-Mart created the dangerous condition in her Response and points to no evidence in the record that would support that argument. See Reece, 81 S.W.3d at 814 ("Because Reece presented no evidence that Wal-Mart placed the foreign substance on the floor or actually knew it was there, she had to prove that the spill had been on the floor for a sufficient period of time that Wal-Mart had a reasonable opportunity to discover it.").

Banks was in the Wal-Mart store for about thirty minutes before the incident, which occurred at 7:40 a.m. on June 11, 2014.[12] Banks tripped and fell over a bar[13] "sticking out" from the bottom of a stand-alone freezer located in the middle of the aisle.[14] Banks walked by the end of the freezer adjacent to the side with the bar twice in the minute before she turned and hit her right ankle on the bar and fell.[15]

The bar is visible in the video of the incident, which begins approximately four minutes before her fall.[16] Banks testified: "I was looking at something and I went around the corner and when I went around the corner that's when I tripped. It was a bar sticking out. I fell over it."[17] Banks did not see the bar before

---

[12]See Oral Deposition of Sandra Banks ("Banks Deposition"), Exhibit C to Motion for Summary Judgment, Docket Entry No. 27-3, p. 7:26; Video Footage, Exhibit D to Motion for Summary Judgment, Docket Entry No. 27-4.

[13]Wal-Mart asserts that it was a "floor-mounted bumper rail," but refers to it as a "bar" for consistency with Banks' pleadings. See Motion for Summary Judgment, Docket Entry No. 27, p. 4.

[14]See Video Footage, Exhibit D to Motion for Summary Judgment, Docket Entry No. 27-4; Banks Deposition, Exhibit C to Motion for Summary Judgment, Docket Entry No. 27-3, pp. 6:24–9:35.

[15]See also Banks Deposition, Exhibit C to Motion for Summary Judgment, Docket Entry No. 27-3, p. 7:26–27; p. 9:33. Video Footage, Exhibit D to Motion for Summary Judgment, Docket Entry No. 27-4. Banks is fully visible at approximately 7:39:45 AM and falls at approximately 7:40:34 AM.

[16]Video Footage, Exhibit D to Motion for Summary Judgment, Docket Entry No. 27-4. The video time stamp shows 7:36:12 AM at the beginning and 7:58:35 AM at the end of the footage.

[17]Banks Deposition, Exhibit C to Motion for Summary Judgment, Docket Entry No. 27-3, p. 7:26–27.

she tripped and does not know how long it had been in that position.[18]  She remembers hearing the voices of two employees who helped her up after she fell, but does not remember seeing the employees before the fall and did not have a conversation with them afterwards.[19]  She does not know if anyone from Wal-Mart was aware of the bar's location before the incident, no one from Wal-Mart told her they were aware of it before the incident, and no one else told her that they or Wal-Mart knew of the location of the bar before the incident.[20]

Relying on the deposition testimony of a Wal-Mart meat manager, Eric Williams, Banks argues that "fact questions are created by Mr. Williams' testimony and the video surveillance tape on the issues of whether Wal-Mart should have known of the unreasonably dangerous condition and that it failed to warn Plaintiff Sandra Banks and failed to correct the dangerous condition."[21]  Banks does not cite any authority in her Response and

---

[18]See id. at 8:29-32.

[19]See id. at 7:26-8:29.

[20]See id. at 8:29-32.

[21]Plaintiff's Response, Docket Entry No. 29, p. 3.  Banks' exhibits are seven excerpts from the Oral Deposition of Eric Wayne Williams ("Williams Deposition").  Williams Deposition is attached in its entirety to Defendant Wal-Mart Stores Texas, LLC's Reply to Plaintiff's Response to Defendant's Traditional Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 30.  To avoid confusion, citations will be to the full deposition document.  See Williams Deposition, Exhibit A to Defendant's Reply, Docket Entry No. 30-1.

does not address Wal-Mart's arguments regarding Texas case law and the time-notice rule.

Williams was one of two employees working in front of nearby wall-mounted freezers at the time of the incident.[22]  Williams stated that he inspected the area around the freezer when he arrived for the beginning of his shift, probably at 7:00 a.m.[23]

> Q.  Okay.  Did you see anything unusual when you walked through that area where the bunker freezer was?
>
> A.  No.
>
> Q.  Did you -- and you looked at the bunker freezer, did you not?
>
> A.  Yes.
>
> Q.  And -- and -- and that -- that bar area.  You looked at that area, did you not?
>
> A.  Yes.
>
> Q.  And did you see it sticking out?
>
> A.  No.  I --[24]

---

[22]See Video Footage, Exhibit D to Motion for Summary Judgment, Docket Entry No. 27-4; see Williams Deposition, Exhibit A to Defendant's Reply, Docket Entry No. 30-1, p. 14:2-17.  Williams testified that he was within about fifteen yards of Banks when she fell.  Id. at 21:12-18.

[23]See Williams Deposition, Exhibit A to Defendant's Reply, Docket Entry No. 30-1, p. 12:2-16; pp. 16:15-18:7; p. 24:18-23; pp. 34:22-35:9.  Williams explained that the shift times have changed now so he does not remember when he arrived for his shift that day, but agreed that if he was working at 7:40 when the accident occurred, he probably arrived at 7:00.  See id. at 11:24-12:16.

[24]See id. at 17:22-18:7.  The attorney then asked a series of questions about whether Williams agreed that it was an unreasonably
(continued...)

. . .

Q.  . . . [Y]ou went by and you looked at it.  Now -- and
you looked right at -- at the bunker freezer, and you
checked where the -- the immediate area where the bar was
sticking in.  You did not notice the bar sticking out --

A.  No.

Q.  -- that morning before she fell?

A.  No.[25]

Later in his deposition, Williams testified:

Q.  [Y]ou noticed the bar being -- sticking out a little
bit after she fell.  That is the first time you noticed
it, correct?

A.  Yes.

Q.  All right.  And then you immediately corrected it and
put it back in place?

A.  Yes.[26]

. . .

Q.  If the bar is sticking out on the video before she
fell in exactly the same position that it was after she
fell.  Obviously the bar is sticking out before she fell,
correct?

A.  Yes.

---

[24](...continued)
dangerous situation to have the bar sticking out.  Id. at
18:8-20:6.  At one point, Williams answered "because it wasn't
noticeable at the time."  Id. at 18:23.

[25]Id. at 20:7-14.  Williams was then asked about Mr. Guyton,
the other employee who was in the area that day.  He stated that
non-managerial employees were also trained to inspect the store,
but "more like for stuff being on the floor.  Spills, you know,
water spills."  Id. at 20:15-21:5.

[26]Id. at 26:22-27:4.

Q.  Okay.  And in your inspection that morning, you did not notice that, did you?

A.  No.[27]

Later, Williams explained as follows:

Q.  . . . Earlier, you gave some testimony that when you went to the store on the day in question, you did an inspection of [the] area where the incident later occurred, is that correct?

. . .

A.  Yes.

. . .

Q.  And at the time that you inspected the area where the incident occurred, was the bar correctly in place or incorrectly in place?

A.  When I -- when I noticed it, it was in place, because it was in the floor.

Q.  All right.  And at that time and during your morning inspection the bar was nor protruding in any way into the walkway, is that correct?

      [Plaintiff's attorney]:  Objection.  Leading.

Q.  Was the bar protruding into the walkway at the time of your inspection?

A.  No.  Not that I can notice.

Q.  And the first time -- when was the first time that you had any knowledge that the bar in question was positioned incorrectly or extending into the walkway?

---

[27]See id. at 27:5-21.  Banks attempts to characterize this as an admission that the bar was sticking out when Williams conducted his inspection.  See Plaintiff's Response, Docket Entry No. 29, p. 2 ¶ 1 ("Williams agrees that if the video shows the bar sticking out before the accident, and the bar is in the exact same position after the accident, then he did not notice the bar sticking out in his inspection the morning of the accident.").

-12-

A.  After she -- she fell.  Like I say, I didn't see her fall.

Q.  All right.  And --

A.  All I saw was --

Q.  -- after she fell, you approached the area, is that right?

A.  Right.

Q.  And at that time were you able to see the bar?

A.  Yes.

Q.  And, at that time, the bar was -- was the bar sticking into the aisle?

A.  Some.

Q.  All right.  And, at that time, the first time that you saw the bar after the plaintiff had her incident, was it easy to tell that the bar was protruding into the aisle?

    [Plaintiff's attorney]:  Objection.  Leading.

Q.  You can answer.

A.  No.

Q.  Was the bar concealed or hidden by any obstructions at that time?

A.  No.[28]

Williams explained that he was checking stock in his department at the time of the incident, but had no recollection of how long he had been doing so, or what he did before that on the

_____

[28]See Williams Deposition, Exhibit A to Defendant's Reply, Docket Entry No. 30-1, pp. 32:24-34:19.

morning of Banks' fall.[29]   He testified that there are regular
inspections of the freezers and the rest of the store and that all
employees are responsible for the safety of the store.[30]   Although
the mid-aisle freezer where Banks tripped is not part of the meat
department that Williams' manages, he stated that he would conduct
walk-through inspections of the area on a regular basis, including
when he first arrived for a shift.[31]

Banks relies on the above testimony from Williams to support
her argument that "Wal-Mart should have known of an unreasonably
dangerous condition."[32]   Apparently, Banks' argument is based on an
assumption that the bar was out of place before Williams inspected
the area, but she does not point to anything in the record to
support this assumption, and does not explain it.   Texas refuses to
impose strict liability on premises owners for any dangerous
condition on their premises.   See Reece, 81 S.W.3d at 816 (citing
CMH Homes, 15 S.W.3d at 102; Gonzalez, 968 S.W.2d at 936).   The
fact that the bar was in the same position immediately before and
after Banks' fall does not show that the bar was in that position
"long enough for the owner or occupier to have discovered it upon
reasonable inspection."   CMH Homes, 15 S.W.3d at 102-03.   Williams'
testimony that he did not "notice" the bar equally supports the

_____

[29]See id. at 12:17-14:24.

[30]See id. at 15:7-18.

[31]See id. at 15:20-17:21.

[32]See Plaintiff's Response, Docket Entry No. 29, pp. 1-2, ¶ 1.

-14-

inference that it was properly in place when he conducted his inspection. See Gonzalez, 968 S.W.2d at 937 (holding that dirt in macaroni cannot be evidence of the length of time the macaroni had been on the floor because the evidence could "no more support the inference that it accumulated dirt over a long period of time than it [could] support the opposite inference that the macaroni had just been dropped . . . and was quickly contaminated by customers and carts traversing the aisle"); see also Kimbell, Inc. v. Roberson, 570 S.W.2d 587, 590 (Tex. Civ. App.—Tyler 1978, no writ); Robledo v. Kroger Co., 597 S.W.2d 560, 560-61 (Tex. Civ. App.—Eastland 1980, writ ref'd n.r.e.); Wilson v. CBL/Parkdale Mall GP, Civ. Action No. 09-12-00566-CV, 2013 WL 1932834, at *3 (Tex. App.—Beaumont May 9, 2013, no pet.) ("The custodian's statement that the spill was not in her assigned area could mean that she was aware of the spilled substance, but did not clean up the substance because she was not assigned to that area. The statement could also give rise to the equal inference that she was unaware of the spilled substance because she was not assigned to that area."); Corbin, 648 S.W.2d at 296.

There is no evidence that the bar was protruding when Williams conducted his inspection approximately 40 minutes before Banks' fall, and Banks does not point to any evidence that would indicate how long the bar was out of place.[33]  In Garcia, 896 F. Supp. 2d at

---

[33]Williams testified that the purpose of the bar was to keep the lower parts of the freezers from being damaged and that carts,
(continued...)

577, the plaintiff slipped on a clear clothes hanger on the floor of a Ross store.  The plaintiff did not have evidence that Ross employees placed the hanger on the floor or actually knew about it, so the plaintiff relied on constructive notice.  Id. at 580.  The court noted that "[a] dangerous condition that has existed for forty-five minutes or less has been considered to be legally insufficient to show constructive knowledge."  Id. at 580–81 (citing Threlkeld v. Total Petroleum, Inc., 211 F.3d 887, 887 (5th Cir. 2000); Brookshire Food Stores, L.L.C. v. Allen, 93 S.W.3d 897, 900–01 (Tex. App.—Texarkana 2002, no pet.); Wal-Mart Stores, Inc. v. Lopez, Civ. Action No. 04-98-00676-CV, 2000 WL 31971 (Tex. App.—San Antonio 2000, no pet.); Kimbell, 570 S.W.2d at 590).  A Ross employee's deposition indicated that a number of people were tasked with "recovery" every thirty minutes, and that she walked through the women's clothing section thirty minutes before the incident and did not see a hanger on the ground.  Id. at 581.  Because the plaintiff did not provide contradictory evidence to

_____

33(...continued)
pallets, and cleaning machines could bump up against it.  Williams Deposition, Exhibit A to Defendant's Reply, Docket Entry No. 30-1, pp. 23:19-24:9.  Williams agreed to the proposition that "it is very important . . . when you first come in in the morning  to look at that bunker bar . . . [because] it could have been knocked out of place in cleaning if nothing else?"  Id. at 24:18-23.  However, there is no evidence that this happened on the day of Banks' fall or had ever happened before.  Williams testified that having the bunker knocked out of place was not something that happened on a regular basis and that this was the first time he had noticed it.  Id. at 25:17-23.  Williams could not recall seeing anything hitting up against the freezer in the time that he was at Wal-Mart the morning of the incident.  Id. at 35:5-9.

indicate how long the hanger was on the ground before she fell, the court granted Ross's motion for summary judgment.  <u>Id.</u> at 581–82. <u>See also</u> <u>Caballero v. Wal-Mart Stores Texas, L.L.C.</u>, Civ. Action No. H-06-1679, 2007 WL 2964747, at *3 (S.D. Tex. Oct. 10, 2007) ("The record is insufficient to raise a fact issue as to Wal-Mart's constructive notice of the water. . . . Caballero testified that the water was clear and transparent.  Caballero had no information as to how the water came to be on the floor or how long it had been there.  Caballero testified that she was in line for ten seconds before she fell.  Although [] employees were in the area, given the low visibility of the water and the evidence that the water had been on the floor for at least ten seconds, no reasonable jury could conclude that Wal-Mart failed to exercise reasonable care by failing to discover and clean up the water."); <u>Knox v. Fiesta Mart, Inc.</u>, Civ. Action No. 01-09-01060-CV, 2011 WL 1587362, at *6 (Tex. App.—Houston [1st Dist.] April 21, 2011, no pet.) ("Knox presented no evidence of how long the watermelon pallet was at the particular location by the entrance door before Knox fell.  The plaintiff must present some evidence of how long the hazard had existed in order to charge the premises owner with constructive knowledge and impose liability . . . .  [Thus], we conclude that Knox failed to raise a fact issue regarding whether Fiesta Mart had constructive knowledge of the condition.") (citations omitted).

The Fifth Circuit recently rejected a plaintiff's argument that the district court erred by applying a "hardline temporal

requirement" for evidence of constructive notice and affirmed the district court's grant of summary judgment. See Murray, 626 F. App'x at 516-17. The court noted that under Reece an employee's proximity or a condition's conspicuity would often be "relevant" to the analysis of how long a condition could exist before a premises owner should reasonably have discovered it, but proximity or conspicuity on their own are insufficient to show constructive notice. Id. The court held that "[plaintiff's] evidence at most allows an inference that the liquid on the floor existed for a few minutes. . . . Such a short amount of time is insufficient to impart constructive notice on Chick-fil-A." Id.[34]

It is well established that mere proximity by employees is not enough to raise a fact issue on whether the premises owner had constructive knowledge of the condition. See Reece, 81 S.W.3d at 816 n.1 (disapproving cases to the extent they suggest proximity alone is enough to establish constructive notice). The "time-notice" rule applies even if employees are in the area and conduct regular store inspections. For example, in Pena v. Home Depot

---

[34]"Murray also offered the testimony of former Chick-fil-A employees who said they check the restrooms every ten minutes during peak hours and every ten to thirty minutes otherwise. Murray's evidence would not enable a reasonable jury to find the liquid on the floor had existed long enough that Chick-fil-A employees would have discovered it in a regular restroom check. Murray also offers no evidence that this policy was not followed in her case. Murray's evidence does not support a reasonable inference that it was more likely than not that the liquid existed long enough that Chick-fil-A should have discovered it. Murray, 626 F. App'x at 518.

U.S.A., Inc., 32 F. Supp. 3d 792, 800-02 (S.D. Tex. 2013), the
manager of Home Depot testified that it is Home Depot's policy to
have employees "'walk the aisles in the store for safety' 'in the
morning . . . and throughout their day.'"  There was no written
evidence of whether or not an inspection occurred before Plaintiff
fell.  However, the court held that "[w]ithout evidence indicating
the length of time the substance had been on the floor, or even
evidence indicating where the substance came from in order to make
a potential inference of the length of time it was on the floor,
the fact that Home Depot does not have documentation regarding the
condition of the aisle before Plaintiff fell is inconsequential."
Id. at 802.  See also Yin, 2009 WL 3753491, at *3 ("Plaintiff has
failed to present any evidence that the hazardous condition existed
for some definite length of time.  The existence of guidelines for
Wal-Mart employees for dealing with hazardous substances does not
indicate the length of [time] that a hazardous condition existed.
There is no evidence in the record that the Defendant had a
reasonable opportunity to discover and remedy the dangerous
condition created by the slippery substance."); Wal-Mart Stores,
Inc. v. Diaz, 109 S.W.3d 584, 589 (Tex. App.—Fort Worth 2003, no
pet.).  In the present case, although there is evidence that
Williams inspected the area sometime approximately forty minutes
before Banks fell, there is no evidence that the bar was out of
place at the time of inspection, or the amount of time the bar may

have been out of place.   The fact that employees were working in the area does not raise a fact issue of constructive notice to Wal-Mart, and Banks does not argue that it does.

It is also well established that Texas law requires the plaintiff to demonstrate some evidence of the amount of time a condition has existed to support a constructive notice argument, or summary judgment for the defendant is appropriate.  See Reece, 81 S.W.3d at 815 ("The rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice is firmly rooted in our jurisprudence.").  Banks has presented no evidence of how the bar came to be out of place or how long it had been out of place when she fell.  Many courts have granted summary judgment to premises owners when faced with a similar lack of temporal evidence.  Sova v. Bill Miller Bar-B-Q Enterprises, Ltd., Civ. Action No. 03-04-00679-CV, 2006 WL 1788231, at *3-4 (Tex. App.—Austin June 30, 2006, no pet.); Taylor v. Good Shepherd Hospital, Inc., Civ. Action No. 12-04-00159-CV, 2005 WL 2035836, at *3 (Tex. App.—Tyler Aug. 24, 2005, no pet.); Hambrick v. Kidd Jones of Henderson County, Civ. Action No. 12-02-00379-CV, 2003 WL 21688117, at *5-6 (Tex. App.—Tyler July 16, 2003, pet. denied); Robinson v. CBOCS, Inc., Civ. Action No. H-14-1332, 2015 WL 1823101, at *1 (S.D. Tex. April 21, 2015); Henderson, 2015 WL 970673, at *2-4; Adkisson v. Wal-Mart Stores Inc., Civ. Action No. SA-12-CV-893-XR,

2013 WL 5574895, at *3-4 (W.D. Tex. Oct. 9, 2013); Cook v. Jaymor
Management Group, LLC, Civ. Action No. H-12-2358, 2013 WL 2338225,
at *2 (S.D. Tex. May 24, 2013); Miller, 2013 WL 620469, at *4.[35]

The only evidence showing how long the bar had been out of
place before the incident is the video footage, which shows the bar
out of place for approximately four minutes before the incident.[36]
Williams testified that it was difficult to tell that the bar was
protruding after Banks' fall.[37]  Banks has not argued or provided
any authority from which the court can conclude that Wal-Mart
should have known of the condition within that time.  See, e.g.,
Murray, 626 F. App'x at 518; Garcia, 896 F. Supp. 2d at 580 ("A
dangerous condition that has existed for forty-five minutes or less
has been considered to be legally insufficient to show constructive
knowledge." (citations omitted)); Sturdivant, 464 F. Supp. 2d at
603 (evidence that a puddle of clear water had been on the floor
for five minutes led to conclusion that as a matter of law, Target
had no reasonable opportunity to discover the water); Lopez, 2000

---

[35]See also Thornton v. Racetrac Petroleum, Inc., Civ. Action
No. 3:13-CV-1658-P, 2014 WL 11460873, at *3 (N.D. Tex. July 31,
2014) (distinguishing Gonzalez and holding that "it is unlikely
that [an oil stain on concrete] could appear in the same quick
amount of time that dirt could appear in macaroni salad dropped on
a heavily-traveled aisle").

[36]See Video Footage, Exhibit D to Motion for Summary Judgment,
Docket Entry No. 27-4.

[37]See Williams Deposition, Exhibit A to Defendant's Reply,
Docket Entry No. 30-1, pp. 33:20-34:19.

WL 31971, at *1-2 (evidence that a substance had been on the floor for five minutes or less and that employees checked the area twenty minutes before incident and did not see anything on the floor was insufficient to show that Wal-Mart should have known of a dangerous condition); Granados v. Wal-Mart Stores, Inc., Civ. Action No. 3:14-CV-3860-G, 2015 WL 4588158, at *2-4 (N.D. Tex. July 30, 2015) (granting summary judgment where plaintiff "presented some evidence to support the inference that the water was on the ground for at least five minutes, [but] failed to demonstrate that this was a reasonable amount of time to allow Wal-Mart to discover the puddle" and the puddle was difficult to see). Without some evidence of Wal-Mart's actual or constructive notice of the condition, Banks cannot maintain a premises liability claim. See Keetch, 845 S.W.2d at 264.

### III.  Conclusions and Order

Viewing the evidence submitted in the light most favorable to Banks and drawing reasonable inferences in her favor, the court concludes that Banks has failed to raise a genuine issue of material fact as to Wal-Mart's actual or constructive notice of the allegedly unreasonably dangerous condition. See Reeves, 120 S. Ct. at 2110; Little, 37 F.3d at 1075; Celotex, 106 S. Ct. at 2552 ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the

burden of proof."). Because there is no genuine issue of material fact as to the first element of her premises liability claim, Wal-Mart Stores Texas, LLC's Traditional Motion for Summary Judgment (Docket Entry No. 27) is **GRANTED**, and a final judgment will be entered dismissing this action with prejudice. Defendant's Motion to Compel (Docket Entry No. 31) is **DENIED** as moot.

SIGNED at Houston, Texas, on this the 8th day of July, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE